UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
WARREN A. OVALLE,                                           :
                                                            :   **MEMORANDUM DECISION AND**
                        Plaintiff,    :   **ORDER**
                                                            :
             - against -                          :   21-cv-5371 (BMC)
                                                            :
                                                            :
SUFFOLK COUNTY, *et al.*,                                   :
                                                            :
                      Defendants.  :
----------------------------------------------------------- X

**COGAN**, District Judge.

      Plaintiff Warren Ovalle brings this action under 42 U.S.C. § 1983 and related statutes for unlawful imprisonment arising from his arrest on two parole detainer warrants, contending that the warrants were invalid. For a host of reasons, his claims fail, and defendants' motions to dismiss are granted.

**BACKGROUND**[1]

      In 2010, Ovalle was convicted of second-degree assault and second-degree attempted robbery. The charges arose from the detention and beating of a victim by Ovalle and his co-defendant, Robert Akre.[2] Ovalle was sentenced cumulatively to six years' incarceration and five years of post-release supervision. In 2015, he was released from custody early, at which time he agreed in writing to both standard and special conditions of post-release supervision.

---

[1] The background of this case is based on the complaint and certain public record documents submitted by defendants giving additional context and to which plaintiff has not objected. See Koch v. Christie's Int'l PLC, 785 F. Supp. 2d 105, 112 (S.D.N.Y. 2011) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991))

[2] It appears that the victim had some familial relationship with Akre.

There are two conditions that plaintiff allegedly violated and that led to this lawsuit, although both conditions covered the same conduct. One was the standard condition not to "be in the company or fraternize with any person [plaintiff] know[s] to have a criminal record." That included his former co-defendant, Akre. The second was a special condition that expressly prohibited him from having any contact with Akre. Plaintiff also acknowledged in writing that these conditions (and the other conditions of release not material here) would remain in effect "until the termination of his legal period of supervision."[3] The standard conditions of release indicated that the maximum term of plaintiff's post-release supervision ended on March 19, 2019, while the special conditions indicated that the maximum term ended on March 17, 2019.

On September 18, 2017, the defendant New York State Department of Corrections and Community Services ("DOCCS") issued a warrant for plaintiff's arrest (the "First Warrant"), and plaintiff was taken into custody. The warrant was based on a Violation of Supervised Release Report (the "First VOSRR") prepared by plaintiff's probation officer and approved by that probation officer's supervisor. It contained 23 charges arising out of, among other violations, plaintiff's continued contact with Akre, his refusal to follow his parole officer's directions not to contact Akre, lying to his Parole Officer about his extensive contact with Akre, and weapons and drug possession.

On September 25, 2017, a preliminary parole revocation hearing was held on two of the charges in the First VOSRR (charges 3 and 10), each alleging that plaintiff met Akre on different

---

[3] Plaintiff alleges that the special conditions were unenforceable because his parole officer "never properly reviewed" them with him. But he does not contest the validity of the standard conditions.

2

dates.[4] The hearing officer found no probable cause as to charge 3 but found probable cause as to charge 10.

On October 30, 2017, prior to the final revocation hearing on charge 10, plaintiff's parole officer filed a Supplementary Violation of Release Report (the "SVORR"), adding charges 24-29 to the First VOSRR. That report alleged that plaintiff, while being held on the First Warrant in the Suffolk County Jail, had multiple, additional meetings with Akre during visiting hours. The SVORR also added an additional charge for possession of dangerous instruments that occurred prior to his arrest on the First Warrant.

On November 2, 2017, while still awaiting his final revocation hearing, plaintiff filed a motion for writ of habeas corpus through counsel in state court (the "First Habeas") to challenge the hearing officer's decision on probable cause as to charge 10. Plaintiff submitted evidence which he claimed demonstrated, *inter alia*, that the testifying witness supporting Charge 10 never identified plaintiff and Akre and that the charge was false because Akre had an alibi for their alleged meeting on that date. On November 29, 2017, the First Habeas court, based on this new evidence, found a lack of probable cause for the remaining charge and vacated the First Warrant on November 30, 2017.

As plaintiff was preparing to depart from custody – indeed, as the corrections officers in his facility were preparing to discharge him – DOCCS served plaintiff with a new warrant of arrest (the "Second Warrant"). Thus, his custody continued. The Second Warrant was supported

---

[4] A preliminary parole revocation hearing is essentially a probable cause hearing to determine if the matter should proceed to a final revocation hearing. Under New York law, the parole officer does not need to establish probable cause as to all the charges in the Violation of Supervised Release Report – one charge is sufficient. See N.Y. Exec. Law § 8005.7(e) (McKinney 2023). If probable cause is found, then the parolee can remain in custody. This does not mean the other charges have been abandoned. Those charges may still be prosecuted at the final revocation hearing. See N.Y. Exec. Law § 8005.19 (McKinney 2023).

by a Violation of Supervised Release Report that had 95 charges (the "Second VOSRR"). Some of those charges were previously stated in the SVORR, alleging meetings between plaintiff and Akre while plaintiff was in custody on the First Warrant.

Plaintiff had his preliminary revocation hearing on the Second Warrant on December 13, 2017, and DOCCS went forward with charge 44, which alleged that plaintiff had visited with Akre while plaintiff was in custody on the First Warrant. The hearing officer found probable cause for that charge based on witness testimony, a visitor log, and video evidence of the visit.

On January 8, 2018, plaintiff filed another petition for a writ of habeas corpus (the "Second Habeas") to challenge (this time) the hearing officer's findings at the preliminary hearing on the Second Warrant. His primary argument was that he could not be charged with parole violations while he was in custody because he could not be on parole while he was in custody. He also argued that the Second Warrant re-asserted the charges contained in the Supplemental Charges. The habeas court rejected both arguments on January 31, 2018. As expressed in plaintiff's order of release, the habeas court found that, under New York law, the terms of plaintiff's parole remained in force until his parole term ended on March 19, 2020, whether he was in custody or not. Plaintiff attempted to appeal this ruling, but his attempt was procedurally defective, and the Appellate Division rejected it.

Plaintiff went to his final revocation hearing on the Second VOSRR on March 1, 2018. The hearing officer sustained 39 of the 116 charges against him.[5] Plaintiff reprised his argument that he could not violate his conditions of parole while in custody on the First Warrant. The Appeals Unit rejected that argument and affirmed.

---

[5] The Second VOSRR initially included 95 charges. An additional 21 charges were added later.

4

Back to the habeas court went plaintiff (the "Third Habeas"), filing another petition on August 5, 2019. He again asserted the same argument rejected by the Second Habeas court – that he was not bound by the terms of his parole while he was in custody.

A review of the transcript of the Third Habeas proceeding shows that the assigned judge became confused by the multitude of prior administrative and judicial proceedings.[6] He did not realize that the hearings on the First Warrant pertained to different, unrelated charges from the ones heard on the Second Warrant. He also did not recognize that at plaintiff's preliminary revocation hearing on the Second Warrant, the habeas court had rejected plaintiff's theory that conditions of parole do not apply while the parolee is in custody on a parole violation, and that the same theory was again rejected when plaintiff administratively challenged the decision in his final revocation hearing on the Second Warrant. The Third Habeas court, effectively skipping over that the Second Warrant was not before the First Habeas Court, and that the Second Habeas Court had rejected plaintiff's theory, believed that DOCCS was trying to do an "end run" on the First Habeas court's ruling that DOCCS had failed to show probable cause on charge 10 of the First Warrant. He therefore granted habeas relief as to the Second Warrant on October 2, 2019, and plaintiff was released.

Plaintiff then brought this action. In essence, plaintiff is claiming that the First Warrant and Second Warrant violated his rights under the Fourth and Fifth Amendments because they were based on false statements. As to the First Warrant, the only thing plaintiff relies on is the habeas decision finding lack of probable cause as to charge 10. As to the Second Warrant,

---

[6] Not that plaintiff's lawyer at the Third Habeas was of any help in explaining things to the Third Habeas judge. She told the Third Judge: "What's before the judge [*i.e.*, the Third Habeas judge] is simply visits to the Suffolk County Jail. *Any other allegation of anything had been dismissed by* [the First Habeas judge] *in a writ of habeas corpus*." (emphasis added). As shown above, that was flat out wrong – the violations heard on the First Warrant had nothing to do with the violations heard on the Second Warrant.

5

plaintiff alleges that by realleging violations that were or could have been raised in the First Warrant, his due process rights under the Fourteenth Amendment and his liberty rights under the Fifth Amendment were violated.

The 17 defendants named in the amended complaint fall into two groups: (1) State agencies and officials including DOCSS, the Acting Commissioner and Regional Director of DOCSS, the Office of Special Investigation and an investigator, an Assistant Attorney General and the Office of the Attorney General, and parole officers; and (2) county entities and officials, including Suffolk County, Suffolk County Sheriff's Department, and John Doe Sheriff's Department Correctional Officers, #1-10.

## DISCUSSION

The amended complaint, like the original complaint, is a hodgepodge of claims, a number of which plaintiff has either expressly withdrawn or withdrawn by non-opposition in responding to defendants' motions to dismiss those claims. See Black Lives Matter v. Town of Clarkstown, 354 F. Supp. 3d 313, 328 (S.D.N.Y. 2018). The net of this is that the claims against DOCCS, Acting DOCCS Commissioner Annucci, Regional DOCCS Director Davies, the Office of Special Investigations, Assistant Attorney General Pack, the Office of Attorney General, and the individual State defendants Owens-Skrodance, Torres, Botwinick, Jenkins, Hnis, and Delrio are dismissed. The claims against Suffolk County, Suffolk County Sheriff's Department, and the John Doe defendants are also dismissed. The only defendants remaining are Parole Officer Hamlette, Senior Parole Officer Juste, and Investigator Mencarelli, and the only claims remaining against them are under 42 U.S.C. §§ 1983 and 1985, based on false arrest and imprisonment, false charges, and due process violations.

6

For the following reasons, plaintiff's false arrest and imprisonment claims are time-barred, and the rest of his allegations do not state a claim on which relief can be granted.

I.      **False Arrest and Imprisonment**

The statute of limitations for constitutional claims under 42 U.S.C. §§ 1983 and 1985 is determined by the statute of limitations for analogous torts under applicable state law. Owens v. Okure, 488 U.S. 235, 249-51 (1989). New York law sets that statute of limitations at three years. See Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002); Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994). Although state law provides the length of time to bring a claim once it accrues, the date of accrual is a matter of federal law. See McDonough v. Smith, 588 U.S. 109 (2019). Under federal law, a § 1983 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980). Applying this standard, the Supreme Court has held that the statute of limitations begins to run on § 1983 false arrest and imprisonment claims when the plaintiff is "held pursuant to [legal] process – when, for example, he is bound over by a magistrate or arraigned on charges." Wright v. Rutulante, No. 16-cv-10068, at *4 (S.D.N.Y. Mar. 27, 2018) (quoting Wallace v. Kato, 549 U.S. 384, 389 (2007)); see also Watson v. United States, 865 F.3d 123, 131 (2d Cir. 2017); Lynch v. Suffolk Cnty. Police Dept., Inc., 348 F. App'x 672, 675 (2d Cir. 2009).

This plainly bars any claims for false arrest and imprisonment arising from plaintiff's arrest on the First Warrant. Plaintiff was arraigned on the charges in the First Warrant on September 25, 2017 and on the charges in the Second Warrant on December 13, 2017. Yet plaintiff did not file his complaint until September 28, 2021. Further, his argument that he "was not aware that his due process rights were violated and that he was unlawfully confined until [the

7

Third Habeas court] granted his Writ of Habeas Corpus" flies in the face of the complaint and settled law.[7] Of course he was aware. Plaintiff's writ to the Third Habeas Court advanced the same set of arguments that he used to challenge the administrative determination and that he repeated in his writ to the Second Habeas court. By January 31, 2018, plaintiff had made these same factual and legal arguments multiple times in front of multiple tribunals. This is not a "discovery" accrual; by January 31, 2018, plaintiff had actual knowledge of all the facts and law that he now relies upon to attack the Second Warrant. And, again, the law is clear that the statute of limitations accrued when he was arraigned on the Second Warrant on December 13, 2017.

In the alternative, plaintiff combines two arguments to try to toll the statute of limitations beyond the date that he commenced this action. First, he seeks to invoke a statutory toll. He relies on the Executive Orders of the Governor of New York that tolled all statutes of limitations due to the pandemic. See 9 NYCRR § 202.8; Paul v. Capra, No. 20-cv-5154, 2022 WL 992845, ay *6 (S.D.N.Y. March 31, 2022). Those Orders, however, tolled statutes of limitations for only 228 days, leaving plaintiff well short. His false-arrest and imprisonment claims related to the Second Warrant, which would have expired on December 13, 2020, expired on July 29, 2021, nearly two months before he filed this action.

Plaintiff seeks to close that gap by relying on equitable tolling. "To qualify for [equitable tolling,] the [plaintiff] must establish that extraordinary circumstances prevented him from filing his [claim] on time, and that he acted with reasonable diligence throughout the period he seeks to toll." Watson v. United States, 133 F. Supp. 3d 502, 521 (E.D.N.Y. 2015) (alterations in original) (quoting Phillips v. Generations Fam. Health Ctr., 723 F.3d 144, 150 (2d Cir. 2013)).

---

[7] Additionally, plaintiff erroneously states that Third Habeas court granted plaintiff's writ on October 11, 2019. The transcript of the hearing and order granting relief are both dated October 2, 2019.

8

The crux of the inquiry is "how severe an obstacle it is for the [person] endeavoring to comply with . . . [the] limitations period." Dillon v. Conway, 642 F.3d 358, 363 (2d Cir. 2011) (quoting Diaz v. Kelly, 515 F.3d 149, 154 (2d Cir. 2008)).

Plaintiff does not come close to meeting the standard for equitable tolling. He relies on the fact that he was vigorously litigating his multiple habeas corpus proceedings to show that he exercised due diligence in pursuing his claims. But equitable tolling is afforded to plaintiffs who demonstrate an extraordinary *inability* to pursue a claim, not an *ability* to pursue a claim. In other words, the fact that nothing stopped plaintiff from so aggressively pursuing his other claims administratively and in court shows that there is no reason for his delay in commencing this action. And his conclusory assertions about impediments such as incarceration and lacking access to counsel do not constitute extraordinary circumstances. See Cotto v. Pabon, No. 07-cv-7656, 2008 WL 4962986, at *12 (S.D.N.Y. Nov. 20, 2008) (collecting cases). Equitable tolling thus does not apply, and plaintiff's claims premised on false arrest and imprisonment are time-barred.

## II.    Remaining Allegations

Plaintiff's remaining allegations shed little light on the nature of his other §§ 1983 and 1985 claims. He asserts only that these claims arise out of "due process" and "false charges," and his opposition to defendants' motions is not helpful.

To the extent that plaintiff meant to bring a substantive or procedural due process claim, he has not done so adequately. The Supreme Court disfavors relying on substantive due process where, as here, the Fourth Amendment affords protection. See Albright v. Oliver, 510 U.S. 266, 274 (1994); Jackson ex rel. Jackson v. Suffolk Cnty., 87 F. Supp. 3d 386, 399 (E.D.N.Y. 2015). As for procedural due process, New York provides ample appellate remedies (of which plaintiff

9

availed himself), and plaintiff has not alleged that these remedies are constitutionally deficient. Plaintiff is accordingly not entitled to relief under § 1983. See Chase Grp. All. LLC v. New York Dep't of Fin., 620 F.3d 146, 152 (2d Cir. 2010).

To the extent that plaintiff's § 1983 claim is premised on false charges, he runs into similar issues. The Second Circuit has made clear that the filing of false charges alone, without some other deprivation of a liberty interest, is not a constitutional violation. See Freeman v. Rideout, 808 F.2d 949, 953 (2d Cir. 1986). Construed most favorably to plaintiff, his "false charges" allegations could be understood as an attempt to plead a gestalt malicious-prosecution claim. Of course, they could just as easily be understood as an "inaptly expressed claim for false arrest," Plonka v. Brown, 2 F. App'x 194, 196 (2d Cir. 2001), which would be time-barred. But, out of an abundance of caution, I will treat them as akin to a malicious prosecution claim under § 1983 and conspiracy to commit malicious prosecution under § 1985.

"A § 1983 claim for malicious prosecution accrues when the prosecution terminates in the plaintiff's favor." Olaizola v. Foley, 797 F. App'x 623, 625 (2d Cir. 2020). Here, then, any malicious prosecution claims arising out of the First Warrant would have accrued on November 30, 2017, the date on which the First Writ was granted, and any arising out of the Second Warrant would accrue on October 2, 2019, the date on which the Third Writ was granted. A malicious-prosecution claim relating to the Second Warrant would have therefore been timely. Even so, the amended complaint fails to state sufficient facts to support such a claim.

In support of his § 1985 claim, plaintiff has failed to allege any facts that could provide a "basis supporting a meeting of the minds" regarding the alleged conspiracy, see Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003), or a basis supporting discriminatory animus, see Manbeck v. Micka, 640 F. Supp. 2d 351, 382 (S.D.N.Y. 2009). The closest the complaint comes is when it

10

asserts that defendants "formed an agreement to violate [plaintiff's] civil and due process rights," that defendants acted "maliciously with the intent to injure" plaintiffs, and that defendants "implemented systemic racism."  These statements, however, are nothing more than legal conclusions, and "[c]omplaints containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights will be dismissed."  Brito v. Arthur, 403 F. App'x 620, 621 (2d Cir. 2010).

Likewise, in support of his § 1983 claim, plaintiff has not pled particularized facts which could support a finding of "actual malice."  Stampf v. Long Island R.R., 761 F.3d 192, 198 (2d Cir. 2014) ("To establish a malicious prosecution claim . . . a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.").  Although at various points the amended complaint lodges general accusations of racism, like allegations that the defendants were "motivated by [plaintiff's] race and skin color," it does not point to any specific facts that make such accusations plausible.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Therefore, these claims are dismissed.

## CONCLUSION

Defendants' motions to dismiss are granted.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
        August 29, 2024

11